UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTINE SULLIVAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social Security )<br>Administration )<br>)<br>Defendant. )<br>) | Civil Action No. 14-13772-LTS |

ORDER

September 24, 2015

SOROKIN, J.

This is an appeal of the decision of the Commissioner of the Social Security Administration denying an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff Christine Sullivan alleges disability based on physical impairments, which are not at issue in this appeal, and also mental impairments. The Administrative Law Judge ("ALJ") determined that Plaintiff retained a sufficient residual functional capacity ("RFC") to perform sedentary jobs that exist in the in the national economy, and thus that Plaintiff was not disabled under the Social Security Act, 42 U.S.C. § 416(i) and § 423(d).

Plaintiff seeks reversal of the Commissioner's decision. She contends that the ALJ failed to properly consider the mental impairments listed on her application for benefits. Doc. No. 17

1

at 2. For the following reasons, Plaintiff's motion to reverse the ALJ's decision is DENIED, and Defendant's motion to affirm the decision is ALLOWED.

I.     BACKGROUND

　　A.     Facts

Plaintiff Christine Sullivan was born on July 22, 1972. She has two children, who were sixteen and fourteen at the time of her hearing before the ALJ. A.R. at 36. Plaintiff completed the tenth grade, but did not graduate from high school. A.R. at 37. She has worked as a crossing guard, realtor, cashier, and bartender. A.R. at 273.

Plaintiff alleges that her physical impairments include Crohn's disease, back pain, and knee pain. A.R. at 41. Plaintiff also contends that she is mentally impaired and suffers from depression and chronic pain, which she believes are symptoms of her physical impairments and her frustration with her inability to work efficiently. A.R. at 69-70. For example, she reported that she becomes depressed and anxious at the thought of not being able to provide for her children. A.R. at 291, 310. She also reported that she has trouble concentrating during the day because the pain caused by her physical impairments often prevents her from sleeping. A.R. at 293, 309. At the time of her hearing, however, she had not seen a therapist in over a year. A.R. at 42, 69. During her hearing, she stated the she does not experience suicidal thoughts or hallucinations, and is able to socialize with family and friends. A.R. at 45, 47, 289. At the time of her hearing she had been taking Ativan, a medication that treats anxiety and insomnia, for thirteen years, and Oxycodone and Morphine to treat her physical ailments. A.R. at 42.

The administrative record contains three expert opinions that discuss Plaintiff's alleged mental impairments. On December 20, 2011, Cornelius N. Kiley, Ph.D., a state agency expert, reviewed the available evidence and provided a report without examining Plaintiff. A.R. at 80-

81, 92-93. That report did not list any mental medically determinable impairments, and noted that Plaintiff was "not being treated with a mental health doctor at this current time" and that "[s]he has never been inpatient for her mental health condition." A.R. at 81.

On May 30, 2012, R. Peter Hurd, Ed.D., performed a psychological consultation. A.R. at 893-95. Dr. Hurd's examination report stated that Plaintiff had been seeing a counselor for two months at that time. A.R. at 893. The report also stated that Plaintiff cried throughout the consultation because she was anxious, but that "[s]he was alert and oriented to person, place and time," and that "[h]er thought process was organized." A.R. at 894. Further, Dr. Hurd noted that her mental state could be attributed to "anticipation of her pending medical problems." Id. Finally, the report provided a tentative Global Assessment of Functioning ("GAF") score of 45.[1] A.R. at 895.

On June 5, 2012, Russell Phillips, Ph.D., a state agency psychologist, reviewed the available evidence and provided an opinion without examining Plaintiff. A.R. at 108-109, 122-123. That report stated that Plaintiff suffered from three severe medically determinable impairments, which were all physical impairments. A.R. at 108. The report also notes that Plaintiff suffers from non-severe affective disorders, symptoms of which are mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace. Id.

B.   Procedural History

On September 16, 2011, Plaintiff filed a Title II application for DIB, and on October 3, 2011, she filed a Title XVI application for SSI. She alleged disability with an onset date of February 1, 2008. On December 21, 2011, her claims were denied. Plaintiff then filed a written request for a hearing, which was held on April 2, 2013. On April 11, 2013, an ALJ determined

---

[1] The GAF is a hundred-point scale used to assess a patient's social, psychological, and occupational functioning.

that Plaintiff was not disabled. Plaintiff requested review by the Administration's Appeal Council, which upheld the ALJ's decision on July 29, 2014.

II.     DISCUSSION

   A.     Standard of Review

The District Court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, the Court may not disturb the Commissioner's findings where they are supported by substantial evidence and the Commissioner has applied the correct legal standard. Id. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); accord Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); see Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003) (noting substantial evidence is less than a preponderance of the evidence). Conversely, where the Commissioner's finding is not supported by substantial evidence or is the result of an error of law in the evaluation of the claim, the Court will not uphold it. § 405(g).

Where the administrative record might support multiple conclusions, the Court must uphold the Commissioner's findings when they are supported by substantial evidence. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991); see Richardson, 402 U.S. at 399 (noting resolution of conflicts in evidence, including medical evidence, is the Commissioner's task). As the Supreme Court has emphasized, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981) (internal quotations omitted). Administrative findings of fact are not conclusive,

however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

      B.      Standard for Entitlement to SSI and DIB Benefits

An individual is entitled to SSI or DIB if he or she is disabled within the meaning of the Social Security Act.  See 20 C.F.R. §423(a)(1), (d).  In order to determine whether an individual is disabled, the Commissioner engages in a five-step analysis.  The five steps of the requisite analysis are: 1) whether the claimant is currently working (if so, he is not disabled and the inquiry ends); 2) whether the claimant has a severe impairment or combination of impairments (if not, he is not disabled and the inquiry ends); 3) whether any of the claimant's impairments meet or medically equal an impairment listed in an appendix to the relevant regulations (if so, he is disabled and the inquiry ends); 4) whether the claimant is able to perform his past relevant work (if so, he is not disabled and the inquiry ends); and 5) considering the claimant's age, education, work experience, and RFC, whether he is able to perform other work (if not, he is disabled; if so, he is not).  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982); Abubakar v. Astrue, No. 11-cv-10456-DJC, 2012 WL 957623, at *2 (D. Mass. Mar. 21, 2012).

      C.      The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date.  A.R. at 16.  At step two, the ALJ found that Plaintiff had the following severe impairments:  Crohn's disease, disorders of the back, and a knee disorder.  A.R. at 17.  The ALJ also found at step two that Plaintiff's mental impairments were non-severe and caused no more than mild functional limitations.  A.R. at 18.  At step three, the ALJ found that Plaintiff did not have any impairment that met or medically equaled an impairment listed in

the appendix to the relevant regulations.  Id.  The ALJ found that Plaintiff has the RFC to perform sedentary work, except that:  Plaintiff can only lift up to ten pounds occasionally, stand or walk for about two hours each workday, and sit for six hours each workday with normal breaks.  A.R. 19.  In the RFC analysis, the ALJ relied on the opinion of Dr. Phillips, who considered Dr. Hurd's examination in formulating his own opinion, and the opinion of Dr. Kiley.  At step four, the ALJ found that in light of Plaintiff's RFC, she was unable to perform any of her past relevant work.  A.R. at 24.  Finally, at step five, the ALJ determined, after consulting a vocational expert at Plaintiff's hearing, that a significant number of jobs exist that Plaintiff can perform.  A.R. at 25.  The ALJ therefore concluded that Plaintiff was not disabled, and thus not entitled to SSI or DIB benefits.

        D.        Plaintiff's Objections

Plaintiff contends that the ALJ's decision was not supported by substantial evidence because the ALJ failed to consider her mental impairments.  Specifically, Plaintiff contends that (1) the ALJ's finding that her mental impairments were non-severe was not supported by substantial evidence, and (2) the ALJ failed to consider her mental impairments in determining her RFC and concluding that she can perform sedentary work.  Plaintiff does not object to the ALJ's findings regarding her physical impairments.  Doc. No. 17 at 9.

        *1.  Step Two Analysis: Severity of Mental Impairments*

Plaintiff argues that the ALJ's conclusion at step two—that her mental impairments were non-severe—was not support by substantial evidence.  Namely, she contends that the ALJ failed to provide specific reasons for why he relied on the opinion of Dr. Phillips, a non-examining psychologist, over that of Dr. Hurd, an examining psychologist.  Doc. No. 17 at 12.

ALJs commonly review assessments provided by three categories of medical experts: sources who have treated the claimant for her impairments, sources who have examined the claimant for purposes of rendering an opinion in connection with a disability claim, and sources who have reviewed the claimant's medical records in order to render an opinion in connection with a claim but have not treated or examined the claimant.  See generally 20 C.F.R. §§ 404.1527; 416.927.  There is "a general presumption of deference to the treating physician's opinion," Abubakar v. Astrue, No. 11-cv-10456, 2012 WL 957623, at *8 (D. Mass. Mar. 21, 2012), and opinions rendered by doctors who have examined the claimant are accorded more weight than those offered by sources who have not done so.  20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

The Court does not agree that the ALJ did not provide a reason for relying on Dr. Phillips's opinion, or that the ALJ relied on Dr. Phillips's opinion and disregarded that of Dr. Hurd.  The ALJ stated that "[w]ith regard to the claimant's alleged mental impairments, I grant great weight to the opinion of [Dr. Phillips]" whose "opinion is consistent with the record as a whole, including . . . Dr. Peter Hurd's consultative examination report."  A.R. at 24.  By means of that statement, the ALJ specifically stated his reason for granting great weight to Dr. Phillips's opinion—because it was consistent with the record—and confirmed that he did not disregard Dr. Hurd's opinion as an examining psychologist.  Notably, Dr. Hurd found that Plaintiff had worked as a crossing guard despite her emotional difficulties, her thought process was organized, and until two months before the exam she had not seen a counselor in six years.  A.R. at 893-95.  While Dr. Hurd did diagnose her with Major Depressive Disorder, his report is not inconsistent with Dr. Phillips's conclusion that her mental impairments caused only mild limitations, or with the ALJ's finding that Plaintiff's depression was non-severe.  A.R. at 108, 895.  The record as a

whole supports the ALJ's detailed analysis explaining the reasons for and evidence supporting the conclusion that Plaintiff's depression did not qualify as a severe impairment. A.R. at 17-18.

Irrespective of Plaintiff's argument regarding the weight the ALJ granted to the opinions of Dr. Phillips and Dr. Hurd at step two, however, it is unnecessary to determine whether substantial evidence supported the ALJ's conclusion that Plaintiff's mental limitations were non-severe.  If the finding was error, the error was harmless because the ALJ found three other severe impairments at step two:  Crohn's disease, disorders of the back, and a knee disorder. A.R. at 17; see, e.g., Blais-Peck v. Colvin, No. 14-CV-30084-KAR, 2015 WL 4692456, at *6 (D. Mass. Aug. 6, 2015) (finding that even if ALJ erred in finding that mental impairments were non-severe, the error was harmless because the ALJ still took the non-severe impairments into account when assessing RFC); Stefanowich v. Colvin, No. CIV.A. 13-30020-KPN, 2014 WL 357293, at *2 (D. Mass. Jan. 30, 2014) (same); Noel v. Astrue, No. 11-CV-30037-MAP, 2012 WL 2862141, at *6 (D. Mass. July 10, 2012) (same).  Thus, as long as the ALJ considered all of Plaintiff's impairments, both severe and non-severe, when assessing her RFC, then any error at step two was harmless.  20 C.F.R. § 404.1545(a)(2) (stating that if the claimant has more than one impairment, the ALJ "will consider all of your medically determinable impairments of which [the ALJ is] aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity").

All of Plaintiff's mental medically determinable impairments were addressed by the ALJ in his discussion of Plaintiff's RFC. The ALJ stated that in making the RFC determination, he "considered all symptoms" and based the determination "on the record as a whole, including both of the claimant's physical *and mental impairments*, both singly and in combination." A.R. at 19, 24 (emphasis added).  Specifically, the ALJ discussed Plaintiff's consultation with Dr.

Hurd on May 30, 2012 (A.R. at 21-22), the mental limitations Plaintiff described at her hearing (A.R. at 22), the psychological opinion of Dr. Phillips (A.R. at 24), and the psychological opinion of Dr. Kiley (A.R. at 24). The ALJ also elsewhere discussed Plaintiff's depression. A.R. at 17-18. Therefore, because the ALJ considered Plaintiff's mental impairments in his RFC assessment, any error in determining that those impairments were non-severe was harmless.

    2. *Step Five Analysis: Residual Functional Capacity & Vocational Expert Testimony*

Plaintiff argues that the ALJ ignored substantial evidence in assessing the effect of her non-severe mental impairments on her RFC. Thus, she contends that the hypothetical posed to the vocational expert should have included mental limitations that would have altered his opinion regarding what types of work she is capable of performing. Doc. No. 17 at 13. Specifically, Plaintiff contends that the ALJ did not consider her mental impairments when deciding that she is able to perform sedentary work, since sedentary work requires: "the ability to understand, remember and carry out simple instructions; make simple work related decisions; respond appropriately to supervision, coworkers and unusual work situations and deal with changes in a routine work setting." Id. at 10 (citing Social Security Ruling 96-9p).

As previously discussed, Plaintiff's assertion that the ALJ did not consider the effects of her mental symptoms on her ability to work is mistaken.[2] The ALJ explicitly stated that all of Plaintiff's impairments, including her non-severe mental impairments, were taken into account in determining her RFC. Further, the ALJ's RFC determination that Plaintiff can perform sedentary work without any sort of mental limitation is supported by substantial evidence. First,

---

[2] Specifically, Plaintiff contends that the ALJ erred in determining "that the effects of depression and chronic pain on her mental abilities was [sic] so insignificant that it was not worth considering when determining her work capacity." Doc. No. 17 at 10.

Dr. Kiley, a state agency expert, reviewed Plaintiff's file and concluded that while she receives medication for depression, she had not been treated by a mental health doctor in years.  A.R. at 81.  Dr. Kiley also deduced that Plaintiff's mental state was a result of her physical impairments. Id.  Second, Dr. Hurd's report stated that while Plaintiff was upset during her consultation, she was "alert and oriented to person, place and time" and "[h]er thought process was organized." A.R. at 894.  Dr. Hurd echoed Dr. Kiley's conclusion when he found that her affect was appropriate as to her thoughts and to "anticipation of her pending medical problems."  Id. Finally, Dr. Phillips's report concluded that Plaintiff has only mild difficulties in maintaining social functioning and concentration, persistence, or pace.  A.R. at 108.

The ALJ's conclusion that Plaintiff could function without mental limitation is also supported by her own testimony and reports.  At her hearing before the ALJ, Plaintiff stated that she socializes "all right with family and friends," and made no other mention of any functional limitations caused by her depression.  A.R. at 47.  She further confirmed that she does not experience suicidal thoughts or hallucinations.  A.R. at 45, 289.  In a Function Report dated November 10, 2011, Plaintiff reported that she can follow written instructions and gets along with authority figures.  A.R. 269-70.  Plaintiff also acknowledged that her mental state is a result of her physical impairments. She stated in the 2011 Report and in a Report dated April 9, 2012, that she does not handle stress well, is "very scared about being sick," and has memory problems because of her physical pain.  A.R. at 270, 291.  She also reported that she becomes depressed and anxious at the thought of not being able to provide for her children.  A.R. at 291, 310.

In arguing that the ALJ ignored important mental limitations in assessing her RFC, Plaintiff urges the Court to consider Dr. Hurd's observation that Plaintiff "showed limitations with immediate and short-term memory" and that he assigned her a low GAF score of 45.  The

10

ALJ, however, explained why he attributed less weight to these findings. The GAF score, though serious, "is but a snap shot of [Plaintiff's] functioning on that particular day and is not indicative of [Plaintiff's] overall level functioning," (A.R. at 21-22) and Dr. Hurd had not performed any examinations of Plaintiff beyond his single consultation on May 30, 2012.  Further, as discussed, the ALJ also pointed to other evidence in the record supporting his conclusion.  He noted that Plaintiff's own testimony and function reports indicated no limitation daily living, only mild limitation in social functioning, and only mild limitation in concentration, persistence, or pace. A.R. at 18.  The ALJ also pointed to the portions of Dr. Hurd's report that do not characterize Plaintiff's mental state in as severe of a manner as Plaintiff suggests, and the reports of Dr. Phillips and Dr. Kiley that did not indicate any mental limitations that were more than mild. A.R. at 21, 24.

  Pointing to one piece of evidence in the administrative record that might support a different RFC determination cannot successfully demonstrate that the ALJ did not rely upon substantial evidence in his assessment.  See, e.g., Dearborn v. Colvin, No. CIV.A. 14-30019-MGM, 2015 WL 1321476, at *5 (D. Mass. Mar. 24, 2015) (finding that the plaintiff's "mere assertion of additional evidence . . . does not suffice to show that the ALJ's determination is unsupported by substantial evidence, because she has not shown the evidence the ALJ relied upon is problematic"); Cordero Burgos v. Colvin, No. CIV.A. 13-30165-MGM, 2014 WL 4771737, at *4 (D. Mass. Sept. 23, 2014) ("In making her argument, Plaintiff asks the court to flip the standard of review and ask whether there is substantial evidence that would have supported the ALJ in reaching different conclusions, rather than ask whether there was substantial evidence to support the decision the ALJ actually made.").  Further, while the ALJ must consider the entire record, he is "not required to discuss each piece of evidence in the

record specifically." Goncalves v. Astrue, 780 F. Supp. 2d 144, 149 (D. Mass. 2011). Thus, after carefully reviewing the administrative record, the Court finds that the ALJ's determination that Plaintiff can perform work without any mental limitations independent from her physical impairments is supported by substantial evidence.

Finally, Plaintiff contends that the ALJ erred by failing to include her impaired mental functioning in the hypothetical posed to the vocational expert. Doc. No. 17 at 11-12. Plaintiff is correct in that a vocational expert's testimony as to whether a Social Security claimant can perform certain types of jobs constitutes substantial evidence only if that testimony is in response to a hypothetical that accurately describes that claimant's limitations in the workplace. Souza v. Astrue, 783 F. Supp. 2d 226, 235 (D. Mass. 2011). The hypothetical posed to the vocational expert in this case, however, reiterated the ALJ's RFC assessment. A.R. at 71-72. As the Court discussed above, that RFC assessment was supported by substantial evidence, and the ALJ's reliance on the vocational expert's testimony was thus proper. See Price v. Astrue, No. CIV.A. 11-11207-JGD, 2012 WL 4571752, at *9 (D. Mass. Sept. 28, 2012).

III.  CONCLUSION

For the above reasons, Plaintiff's motion to reverse is DENIED, and Defendant's motion to affirm is ALLOWED.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge